PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

MICHELLE LANE; SECOND
AMENDMENT FOUNDATION, INC.;
MATTHEW WELLING; AMANDA
WELLING,

        *Plaintiffs-Appellants,*

v.

ERIC H. HOLDER, JR., Attorney
General of the United States; W.
STEVEN FLAHERTY, Superintendent,
Virginia State Police,

        *Defendants-Appellees,*

        and

DISTRICT OF COLUMBIA,

        *Defendant.*

No. 11-1847

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Gerald Bruce Lee, District Judge.
(1:11-cv-00503-GBL-TRJ)

Argued: October 23, 2012

Decided: December 31, 2012

Before MOTZ, DUNCAN, and FLOYD, Circuit Judges.

---

Affirmed by published opinion. Judge Duncan wrote the opinion, in which Judge Motz and Judge Floyd joined.

## COUNSEL

**ARGUED:** Alan Gura, GURA & POSSESSKY, PLLC, Alexandria, Virginia, for Appellants. Anisha S. Dasgupta, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C.; Earle Duncan Getchell, Jr., OFFICE OF THE ATTORNEY GENERAL, Richmond, Virginia, for Appellees. **ON BRIEF:** Tony West, Assistant Attorney General, Michael S. Raab, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C.; Neil H. MacBride, United States Attorney, Alexandria, Virginia, for Appellee Eric H. Holder, Jr. Kenneth T. Cuccinelli, II, Attorney General, Wesley G. Russell, Jr., Deputy Attorney General, Catherine Crooks Hill, Senior Assistant Attorney General, OFFICE OF THE ATTORNEY GENERAL, Richmond, Virginia, for Appellee W. Steven Flaherty.

## OPINION

DUNCAN, Circuit Judge:

Michelle Lane, Amanda and Matthew Welling, and the Second Amendment Foundation ("SAF") (collectively, "the plaintiffs") filed a pre-enforcement challenge to the constitutionality of a federal statute restricting interstate transfers of handguns, 18 U.S.C. § 922(b)(3); a federal regulation implementing that statute, 27 C.F.R. § 478.99; and a Virginia law prohibiting Virginia firearms dealers from selling handguns to non-residents of Virginia, Va. Code section 18.2-308.2:2. The district court dismissed their complaint on standing grounds. It concluded that any injury to the plaintiffs resulted from decisions made by third parties rather than the application of the challenged laws to them directly, and therefore, that they lacked standing. On appeal, the plaintiffs argue that their alleged injuries are traceable to the challenged laws. For the reasons that follow, we affirm.

## I.

## A.

Congress enacted the federal statute at issue, 18 U.S.C. § 922(b)(3), part of the Gun Control Act of 1968, Pub. L. No. 90-618, 82 Stat. 1213, "to strengthen Federal controls over interstate and foreign commerce in firearms and to assist the States effectively to regulate firearms traffic within their borders." H.R. Rep. No. 90-1577, at 6 (1968), *reprinted in* 1968 U.S.C.C.A.N. 4410, 4411. One of the mechanisms for doing so was a requirement that interstate transfers of firearms take place through federal firearms licensees ("FFLs"). 18 U.S.C. § 922(a)(1)-(5). Under the federal statute, a buyer may purchase a handgun from an out-of-state source, but that source must be a FFL and the buyer must arrange for the handgun to be delivered to an in-state FFL, from whom the buyer may retrieve the gun. *See id.* § 922(b). In contrast, FFLs may sell or deliver a rifle or shotgun to an out-of-state resident if the transferee meets in person with the FFL in the state where she wishes to buy the firearm and if the transfer complies with the laws of both the transferee's and transferor's states. The Bureau of Alcohol, Tobacco and Firearms issued implementing regulations that closely track the federal statute. *See* 27 C.F.R. § 478.99.

Virginia's statute likewise permits the sale or transfer of a rifle or shotgun to a non-resident of Virginia, but prohibits the direct sale or transfer of a handgun to a non-resident. Va. Code sections 18.2-308.2:2(B)(5), (C). As with the federal statute, to sell or transfer a handgun to a non-resident, the firearms dealer must send the gun to a firearms dealer in the non-resident's home state, from whom the buyer may retrieve the gun. *Id.*

B.

Lane and the Wellings are residents of Washington, D.C. who wish to acquire handguns from other states. Lane ordered two handguns from a FFL in Virginia. She was originally unable to take possession of the handguns, as Washington, D.C.'s sole FFL, Charles Sykes, had lost his lease and was no longer in business.[1] She contends that but for the interstate handgun transfer prohibitions, she would have taken possession of the handguns directly in the Virginia store. Since the time of the district court's dismissal of this case, Sykes has reestablished his business, and Lane has been able to acquire one of her out-of-state handguns from him. To obtain a gun moving interstate from Sykes, Washington, D.C. residents must pay a transfer fee. The Wellings hoped to acquire a handgun from Amanda Welling's father, who wished to transfer the gun to her through a Virginia FFL. Generally, Lane and the Wellings assert that they "would participate more frequently in the market for handguns but for the interstate handgun transfer ban." Appellants' Br. at 18. They find the various transactions they must undertake to acquire a handgun "burdensome and expensive." *Id.*

SAF is a non-profit membership organization with members from across the country, including Washington, D.C. and Virginia. Its purposes include "promoting the exercise of the right to keep and bear arms; and education, research, publishing and legal action focusing on the Constitutional right to privately own and possess firearms, and the consequences of gun control." J.A. 29. SAF contends that the challenged laws have caused it to expend resources in response.

---

[1]There was some dispute below about whether there were any FFLs in business in Washington, D.C. at the time this case was before the district court. The district court assumed for purposes of argument that the plaintiffs were presently unable to receive interstate transfers of handguns because there were no FFLs operating in Washington, D.C. At this juncture, however, the parties agree that at least one FFL operates in Washington, D.C.

## II.

The plaintiffs sought injunctive and declaratory relief against Eric Holder, Jr., in his official capacity as Attorney General of the United States, and W. Stephen Flaherty, in his official capacity as Superintendent of the Virginia State Police, to prevent enforcement of 18 U.S.C. § 922(b)(3), 27 C.F.R. § 478.99, and Va. Code section 18.2-308.2:2, to the extent these laws prohibit the acquisition of handguns by out-of-state residents.[2] The plaintiffs moved for a preliminary injunction. In a hearing on that motion, the district court dismissed the case for lack of standing. The plaintiffs now appeal.

## III.

To have standing, a plaintiff must be able to show:

> (1) it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000).

We review a district court's decision to dismiss for lack of standing de novo. *See Doe v. Obama*, 631 F.3d 157, 160 (4th Cir. 2011).

---

[2]The complaint also challenged Washington, D.C. municipal regulations, which have since been modified. Upon Washington, D.C.'s amendment of its regulations, the plaintiffs moved to dismiss their claims against Washington, D.C., and we granted their motion.

A.

1.

To establish an injury in fact as required by the first prong of our standing analysis, the plaintiffs must demonstrate that their claim rests upon "a distinct and palpable injury" to a legally protected interest. *Warth v. Seldin*, 422 U.S. 490, 501 (1975). This injury must "affect the plaintiff[s] in a personal and individual way." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 n.1 (1992).

The plaintiffs assert that the challenged laws result in "a restriction on the range of retailers available to consumers of constitutionally-protected articles." Appellants' Br. at 23. This, they contend, constitutes a constitutional injury that has frequently been considered sufficient for standing by the Supreme Court. We find that because the challenged regulations do not affect the plaintiffs directly, their situation is distinguishable from the cases in which the Supreme Court has deemed such a restriction to constitute an injury in fact.

A plaintiff who alleges an injury based on restriction of distribution channels may be able to show standing if the defendant's actions directly affect that plaintiff. For instance, the Supreme Court found that a distributor of contraceptives had standing to challenge a law barring all but licensed pharmacists from selling contraceptives. *Carey v. Pop. Servs. Int'l*, 431 U.S. 678, 682-83 (1977). In *Carey*, however, the lead plaintiff was a distributor directly regulated by the law being challenged. *Id.* The plaintiffs in this case are in a fundamentally different situation, as the laws and regulations they challenge do not apply to them but rather to the FFLs from whom they would buy handguns. It is the absence of a direct effect that distinguishes the facts before us from those in decisions on which plaintiffs seek to rely.

Consumers burdened by regulation of the sellers they transact with may be able to establish that they have suffered an

injury in fact, as the Supreme Court has made clear in the context of Commerce Clause litigation. *See Gen. Motors Corp. v. Tracy*, 519 U.S. 278, 286 (1997) (holding that "cognizable injury from unconstitutional discrimination against interstate commerce does not stop at members of the class against whom a State ultimately discriminates, and customers of that class may also be injured," as is the case when a customer is liable to pay a tax when buying from an out-of-state producer). Again, however, the plaintiffs in *Tracy* were burdened directly, as the government required them to pay a tax upon buying products from out-of-state sellers. *See Ben Oehrleins & Sons & Daughter, Inc. v. Hennepin County*, 115 F.3d 1372, 1381 (8th Cir. 1997) (concluding that *Tracy* and related Commerce Clause cases "do not stand for the proposition that consumers paying the end-line cost of an economic regulation have standing to challenge the regulation under the Commerce Clause," because plaintiffs in those cases "were not alleging that they incurred a passed-on cost; rather, the plaintiffs—not the out-of-state entities—were directly assessed the challenged taxes"). No such government-imposed assessment is levied against the plaintiffs here.

In a somewhat different context, several of our sister circuits have found standing for wine consumers prevented from acquiring wine directly from out-of-state wine sellers as a result of marketplace regulation. *See Freeman v. Corzine*, 629 F.3d 146, 154 (3d Cir. 2010); *Bridenbaugh v. Freeman-Wilson*, 227 F.3d 848, 849-850 (7th Cir. 2000). The plaintiffs in those cases alleged that they were unable to acquire the wines they wished to purchase through interstate commerce. Here, the plaintiffs are not prevented from obtaining the handguns they desire. At worst, they are burdened by additional costs and logistical hurdles.

These minor inconveniences are distinct from an absolute deprivation. To obtain a handgun from another state, the plaintiffs must pay a transfer fee and visit multiple FFLs, but the laws do not prevent them from exercising their Second

Amendment right to bear arms. This case thus differs from those in which courts have found standing for plaintiffs prevented outright from obtaining or possessing firearms. *See, e.g.*, *Ezell v. Chicago*, 651 F.3d 684, 695, 698 (7th Cir. 2011) (finding standing where plaintiffs complained that a ban on firing ranges within the city, accompanied by a requirement that firearm owners have completed training at a firing range, unconstitutionally impaired their Second Amendment right, emphasizing that "the occasional expense and inconvenience of having to travel to a firing range in the suburbs . . . [is] not the relevant constitutional harm"); *Dearth v. Holder*, 641 F.3d 499, 502-03 (D.C. Cir. 2011) (finding standing where a regulation prevented plaintiff from legally obtaining a firearm in the United States at all). The plaintiffs in this case do not allege such an injury. In fact, at least one of them has been able to purchase a handgun since the beginning of this litigation.[3]

Because the challenged laws do not burden the plaintiffs directly, and because the plaintiffs are not prevented from acquiring the handguns they desire, they do not allege an injury in fact.

2.

Even if the plaintiffs could demonstrate injury in fact, they must still establish that their alleged injury is traceable to the challenged laws.[4] The plaintiffs contend that the district court erred in finding that they failed to do so. The plaintiffs allege that their injury stems from an inability to obtain their firearms from a store in Virginia, which inhibits them from

---

[3]For the same reason, *Doe v. Bolton*, 410 U.S. 179 (1973), which the plaintiffs cite in arguing that a restriction in distribution channels constitutes an injury in fact, is distinguishable. As in *Dearth* and *Ezell*, the challenged law in *Doe* prevented the plaintiff from exercising a constitutional right.

[4]Like the district court, the plaintiffs focus on the element of traceability. Because we agree with the district court that traceability is absent, we do not reach the separate requirement of redressability.

obtaining the handguns they want in the manner they desire. The plaintiffs argue that the associated burden and expense is a direct consequence of the challenged laws.

As the district court noted, however, any injury to the plaintiffs is caused by decisions and actions of third parties not before this court rather than by the laws themselves. For this reason, they face an uphill battle in establishing traceability. "[W]hen a plaintiff is not the direct subject of government action, but rather when the 'asserted injury arises from the government's allegedly unlawful regulation (or lack of regulation) of someone else,' satisfying standing requirements will be 'substantially more difficult.'" *Frank Krasner Enters., Ltd. v. Montgomery County*, 401 F.3d 230, 234–35 (4th Cir. 2005) (quoting *Lujan*, 504 U.S. at 562).

In *Krasner*, a gun show promoter and a gun show exhibitor sought to challenge a law that would revoke a subsidy from any venue that allowed the display or sale of guns on site. *Id.* at 232. In response to the law, the venue in which the gun show promoter had regularly leased space declined to renew its lease. *Id.* We determined that the plaintiffs could not establish traceability, as the "purported injury . . . is not directly linked to the challenged law because an intermediary . . . stands directly between the plaintiffs and the challenged conduct in a way that breaks the causal chain." *Id.* at 236.

In challenging laws that do not apply directly to would-be handgun purchasers, Lane and the Wellings are in a similar posture to that of the plaintiffs in *Krasner*.[5] As was true there,

---

[5]The plaintiffs aver that if they take possession of handguns in Virginia, they will be arrested and prosecuted. Whether or not this is true, the law prohibits FFLs from conveying the handguns to the plaintiffs in Virginia in the first place. Moreover, the plaintiffs' attempts to analogize this case to *Dearth*, 641 F.3d 499, are unavailing. In that case, the law at issue precluded the plaintiff from purchasing a firearm altogether. *Id.* at 504. The standing question in *Dearth* was whether the plaintiff alleged an injury in fact; traceability was not at issue. *Id.*

the costs the plaintiffs complain of are not traceable to the laws they challenge, but to the FFLs that charge transfer fees. *See Krasner*, 401 F.3d at 232; *see also San Diego County Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1130 (9th Cir. 1996) (holding that plaintiffs lacked standing to challenge legislation that, by banning certain guns, resulted in dealers raising prices on guns and ammunition the plaintiffs wished to purchase, because "nothing in the Act directs manufacturers or dealers to raise the price of regulated weapons."); *cf. Common Cause v. Dep't of Energy*, 702 F.2d 245, 251 (D.C. Cir. 1983) (noting that "where injury is alleged to occur within a market context, the concepts of causation and redressability become particularly nebulous and subject to contradictory, and frequently unprovable, analyses"). Nothing in the challenged legislation or regulations directs FFLs to impose such charges. Because any harm to the plaintiffs results from the actions of third parties not before this court, the plaintiffs are unable to demonstrate traceability.

B.

The plaintiffs argue that even if Lane and the Wellings lack standing, SAF should still be able to bring this action.[6] In determining whether an organization has standing, we must conduct the same inquiry as in the case of an individual. *See Havens Realty Corp. v. Coleman*, 455 U.S. 363, 378 (1982).

An organization may suffer an injury in fact when a defen-

---

[6]Because Lane and the Wellings do not have standing to sue, it follows that SAF does not have associational standing. An association has standing when "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Washington State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977). SAF fails the first prong of *Hunt*'s associational standing test. Thus, if SAF were to have standing, it would be as a result of independent injury to it as an organization.

dant's actions impede its efforts to carry out its mission. *See id.* at 379. For instance, in *Havens*, an organization dedicated to promoting equal opportunity in housing sued a real estate company that allegedly practiced racial steering. Because the defendant's alleged practices "perceptibly impaired [the organization's] ability to provide counseling and referral services for low- and moderate-income homeseekers," a key component of the plaintiff organization's mission, that plaintiff suffered an injury in fact. *Id.*

The plaintiffs analogize SAF's position to that of the organization in *Havens*. Part of the harm to the organization in *Havens* took the form of a drain on its resources, and here the plaintiffs likewise assert that SAF has been injured because its "resources are taxed by inquiries into the operation and consequences of interstate handgun transfer provisions." Appellants' Br. at 33.

This "mere expense" to SAF does not constitute an injury in fact, however. Although a diversion of resources might harm the organization by reducing the funds available for other purposes, "it results not from any actions taken by [the defendant], but rather from the [organization's] own budgetary choices." *Fair Emp't Council of Greater Washington, Inc. v. BMC Mktg. Corp.*, 28 F.3d 1268, 1276 (D.C. Cir. 1994). To determine that an organization that decides to spend its money on educating members, responding to member inquiries, or undertaking litigation in response to legislation suffers a cognizable injury would be to imply standing for organizations with merely "abstract concern[s] with a subject that could be affected by an adjudication." *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 40 (1976); *see BMC Mktg.*, 28 F.3d at 1277; *Ass'n for Retarded Citizens of Dallas v. Dallas County Mental Health & Mental Retardation Ctr. Bd. of Trustees*, 19 F.3d 241, 244 (5th Cir. 1994) (noting that finding standing for an organization that redirects some of its resources to litigation and legal counseling in response to actions of another party would "impl[y] that any sincere plaintiff could bootstrap

standing by expending its resources in response to actions of another"). Such a rule would not comport with the case or controversy requirement of Article III of the Constitution.

We therefore conclude that neither SAF nor the individual plaintiffs have standing.

IV.

For the foregoing reasons, the judgment of the district court is

*AFFIRMED*.