**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 20-1010**

PEOPLE FOR THE ETHICAL TREATMENT OF ANIMALS, INC.,

        Plaintiff - Appellee,

    v.

TRI-STATE ZOOLOGICAL PARK OF WESTERN MARYLAND, INC.; ANIMAL PARK, CARE & RESCUE, INC.; ROBERT L. CANDY,

        Defendants - Appellants.

Appeal from the United States District Court for the District of Maryland, at Baltimore. Paula Xinis, District Judge.  (1:17-cv-02148-PX)

Submitted:  January 11, 2021               Decided:  January 29, 2021

Before WILKINSON and KING, Circuit Judges, and SHEDD, Senior Circuit Judge.

Affirmed by unpublished per curiam opinion.

Lynn T. Krause, BRADY, FISCHEL AND DAILY, LLC, Annapolis, Maryland; Nevin L. Young, Annapolis, Maryland, for Appellants.  Adam B. Abelson, Baltimore, Maryland, Marcos E. Hasbun, ZUCKERMAN SPAEDER LLP, Tampa, Florida; Caitlin Hawks, Zeynep Graves, PETA FOUNDATION, Los Angeles, California, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

People for the Ethical Treatment of Animals, Inc. (PETA) filed a complaint against Tri-State Zoological Park of Western Maryland, Inc., Animal Park, Care & Rescue, Inc., and Robert L. Candy, seeking declaratory and injunctive relief in connection with Defendants' treatment of two ring-tailed lemurs, five tigers, and one African lion (collectively, "the eight animals"). PETA's two-count complaint claimed that the conditions under which Defendants maintained the eight animals constituted an unlawful taking proscribed by the Endangered Species Act of 1973 (ESA or the Act) and its implementing regulations.[*] The district court denied Defendants' Fed. R. Civ. P. 12(c) motion for judgment on the pleadings, concluding that PETA had standing to bring suit. The court later denied Defendants' summary judgment motion—determining that PETA had demonstrated a sufficient injury to its mission arising from Defendants' claimed misconduct and that the relief PETA sought was available—and granted partial summary judgment in PETA's favor. The parties then proceeded to a bench trial, at which Dr. Kim Haddad testified as an expert in the area of veterinary medicine with regard to lions, tigers,

---

[*] The ESA prohibits the "tak[ing]" of any endangered or threatened species of wildlife within the United States, 16 U.S.C. § 1538(a)(1)(B), and makes it unlawful "for any person subject to the jurisdiction of the United States" to "possess" an endangered or threatened species that has been unlawfully "taken," *id.* § 1538(a)(1)(D). The ESA defines the term "take" as "to harass, harm, pursue, hunt, shoot, wound, kill, trap, capture, or collect or to attempt to engage in any such conduct." *Id.* § 1532(19). The ESA allows "any person" to commence a civil suit on his own behalf "to enjoin any person . . . who is alleged to be in violation" of the "take" provision of the Act or of a regulation promulgated under the Act. *Id.* § 1540(g)(1)(A).

2

and lemurs. After trial, the district court found that PETA had organizational standing in the case and found for it on all theories of liability.

On appeal, Defendants challenge the district court's standing rulings, arguing that PETA failed to plead in its complaint and prove at the summary judgment stage and later at trial that it suffered an organizational injury. Defendants also argue that PETA failed to plead in its complaint and prove at the summary judgment stage and then later at trial the availability of relief that would redress its claimed injuries and that a due process violation resulted from the way in which PETA responded to their summary judgment motion and proposed following trial that animals unlawfully taken under the ESA be transferred to an animal sanctuary. Finally, Defendants contend that the district court erred in permitting Dr. Haddad to testify at trial—after rejecting their summary judgment argument that her opinion should be struck—regarding the veterinary care provided at Tri-State. Finding no reversible error, we affirm.

Although neither party has addressed the propriety of Defendants' effort to appeal the district court's denial of their summary judgment motion, "it is well settled that [this court] 'will not review, under any standard, the pretrial denial of a motion for summary judgment after a full trial and final judgment on the merits.'" *Bunn v. Oldendorff Carriers GmbH & Co. KG*, 723 F.3d 454, 460 n.3 (4th Cir. 2013) (quoting *Varghese v. Honeywell Int'l, Inc.*, 424 F.3d 411, 421 (4th Cir. 2005)); *see Ortiz v. Jordan*, 562 U.S. 180, 183-84 (2011). We find no reason to deviate from that rule here. Accordingly, Defendants' challenges directed at the district court's denial of their motion for summary judgment are not properly before this court and must be denied.

3

Next, we review the district court's standing rulings de novo. *Hill v. Coggins*, 867 F.3d 499, 505 (4th Cir. 2017); *Drager v. PLIVA USA, Inc.*, 741 F.3d 470, 474 (4th Cir. 2014).

"As the Supreme Court has consistently emphasized, Article III of the Constitution limits the jurisdiction of federal courts to Cases and Controversies." *Hutton v. Nat'l Bd. of Exam'rs in Optometry, Inc.*, 892 F.3d 613, 619 n.5 (4th Cir. 2018) (internal quotation marks omitted). "The requirement that a [p]laintiff possess standing to sue emanates from that constitutional provision." *Id.* (internal quotation marks omitted).

To possess standing to sue under Article III, a plaintiff must have "(1) . . . suffered an injury-in-fact that was concrete and particularized and either actual or imminent; (2) there [must have been] a causal connection between the injury and the defendant's conduct (i.e. traceability); and (3) the injury [must have been] likely to be redressable by a favorable judicial decision." *Hutton*, 892 F.3d at 618-19 (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)). The burden of sufficiently establishing these three elements falls on the party invoking federal jurisdiction—here, PETA. *Lujan*, 504 U.S. at 561; *Hutton*, 892 F.3d at 619. An organization like PETA can assert standing based on two distinct theories. It can assert standing in its own right to seek judicial relief for injury to itself and as a representative of its members who have been harmed. *See S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 182 (4th Cir. 2013). It is the former option-referred to as organizational standing-that is at issue here.

4

In determining whether organizational standing exists, "a court conducts the same inquiry as in the case of an individual." *Md. Highways Contractors Ass'n, Inc. v. Maryland*, 933 F.2d 1246, 1250 (4th Cir. 1991). This evaluation, "of course, depends not upon the merits" of the claims asserted "but on whether the plaintiff is the proper party to bring the suit." *White Tail Park, Inc. v. Stroube*, 413 F.3d 451, 460 (4th Cir. 2005) (internal citation, quotation marks, and brackets omitted).

With respect to an injury-in-fact, "the first and foremost of standing's three elements," *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (internal quotation marks and brackets omitted), an organization that "seek[s] to do no more than vindicate [its] own value preferences through the judicial process" cannot establish standing, *Sierra Club v. Morton*, 405 U.S. 727, 740 (1972). An organization like PETA, however, "may suffer an injury in fact when a defendant's actions impede its efforts to carry out its mission." *Lane v. Holder*, 703 F.3d 668, 674 (4th Cir. 2012) (citing *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982)); *see Warth v. Seldin*, 422 U.S. 490, 511 (1975).

In *Havens Realty*, the Supreme Court held that an organization dedicated to achieving equal opportunity in housing had sufficiently alleged organizational injury and that the district court had erred in dismissing for lack of standing the organization's complaint to sue an apartment complex based on allegedly unlawful racial steering practices. 455 U.S. at 379. The organization had alleged that it "ha[d] been frustrated by defendants' racial steering practices in its efforts to assist equal access to housing through counseling and other referral services," and that it had "devote[d] significant resources to identify and counteract the . . . racially discriminatory steering practices." *Id.* (internal

5

quotation marks omitted). The Supreme Court reasoned that "[i]f, as broadly alleged, [the] steering practices ha[d] perceptibly impaired [the organization's] ability to provide counseling and referral services for low- and moderate-income homeseekers, there c[ould] be no question that [it] had suffered [an] injury in fact" because "[s]uch concrete and demonstrable injury to the organization's activities-with the consequent drain on the organization's resources-constitute[d] far more than simply a setback to the organization's abstract social interests." *Id.*

Subsequently, in *Lane*, this court held that an organization dedicated to promoting the exercise of the right to keep and bear arms did not sufficiently allege standing to sue the Attorney General of the United States based on an allegedly unconstitutional statute restricting interstate transfers of certain firearms. 703 F.3d at 671, 675. The organization had claimed that it "ha[d] been injured because its resources [we]re taxed by inquiries into the operation and consequences of interstate handgun transfer provisions." *Id.* at 675 (internal quotation marks omitted). This court rejected the organization's effort to analogize its position to that of the organization in *Havens Realty* and reasoned that "[t]his mere expense to [the organization] d[id] not constitute an injury in fact" because "[a]lthough a diversion of resources might harm the organization by reducing the funds available for other purposes, it results not from any actions taken by the defendant, but rather from the organization's own budgetary choices." *Id.* (internal quotation marks and brackets omitted). This court further noted that, "[t]o determine that an organization that decides to spend its money on educating members, responding to member inquiries, or undertaking litigation in response to legislation suffers a cognizable injury would be to

6

imply standing for organizations with merely abstract concerns with a subject that could be affected by an adjudication," which "would not comport with the case or controversy requirement of Article III of the Constitution." *Id.* (internal quotation marks omitted). Post-*Havens Realty* and *Lane*, this court has reaffirmed that a plaintiff has suffered an organizational injury if the challenged policy or practice frustrated both its purpose and caused a drain on its resources. *See S. Walk*, 713 F.3d at 183 (distinguishing *Havens Realty* as finding organizational injury where "broadly alleged" impairment of organization's ability to advance its purposes combined with alleged "consequent drain on the organization's resources").

We conclude after review of the allegations in PETA's complaint and the proof adduced at trial that PETA has satisfied the standard set forth in *Havens Realty*. As alleged and proved, PETA's mission is to protect animals from abuse, neglect, and cruelty. PETA pursues this mission through several programs, including public education, cruelty investigations and research, the rescue of animals, and protest campaigns. Defendants' take of animals at Tri-State protected by the ESA increased animals subject to abuse and created the misimpression that the conditions in which the animals were kept were lawful and consistent with animal welfare. PETA is required by its mission to protect and rescue animals from abuse and neglect, and, in accordance with this mission-based requirement, devoted its resources to submit complaints about Defendants to government agencies, compile and publish information about Tri-State's treatment of its animals, and to investigate and monitor Defendants. The allegations and evidence adduced showed that this diversion of resources impeded PETA's efforts to carry out its mission by reducing its

7

ability to engage in mission-related campaigns against other zoos. On the record here, Defendants' ESA-violative conduct "perceptibly impaired" PETA's ability to carry out its mission through frustration of that mission and a consequent drain on its resources. *Havens Realty*, 455 U.S. at 379. "Such concrete and demonstrable injury to the organization's activities . . . constitutes far more than a simple setback to the organization's abstract social interests." *Id.*; *see also S. Walk*, 713 F.3d at 183.

Defendants' arguments on appeal do not establish to the contrary. Included under the umbrella of Defendants' assertion that there was no injury-in-fact giving rise to PETA's standing is the argument that this case is devoid of allegations or evidence that any member, affiliate, or agent of PETA suffered any aesthetic or emotional injury in visiting Tri-State. This assertion misses the point. Although Defendants correctly note that no individual person-plaintiffs alleged or proved an aesthetic injury, that failure has no relevance to the question here, which is whether the district court reversibly erred in its rulings that PETA alleged and proved an injury-in-fact.

Defendants also assert that PETA manufactured "its own attempt at standing" by "choosing a target, spending money and then filing" the subject lawsuit and that these acts do not establish an injury-in-fact. Defendants further suggest that the district court's rulings cannot be squared with *Lane* and that *Havens Realty* does not support a cognizable injury for PETA here. *Lane*, however, noted that "[a]n organization may suffer an injury in fact when a defendant's actions impede its efforts to carry out its mission," such as "in *Havens*," when the defendant's practices "perceptibly impaired" a "key component" of the organization's mission. 703 F.3d at 674-75 (internal quotation marks omitted). PETA did

8

not allege or prove that its injury consisted of the costs associated with the instant lawsuit, but, rather, satisfied *Havens Realty* by alleging and proving that Defendants' actions impaired its ability to carry out its mission combined with a consequent drain on its resources. Accordingly, we affirm the district court's rulings that PETA alleged and proved an injury-in-fact.

Defendants also argue that PETA failed to allege and prove at trial that the relief it requested would redress its claimed injury and that a due process violation resulted from the way in which PETA responded to their summary judgment motion and proposed following trial that animals unlawfully taken under the ESA be transferred to an animal sanctuary. Defendants, however, do not present these claims in accordance with Fed. R. App. P. 28(a)(8)(A) ("[T]he [appellant's] argument . . . must contain . . . appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies."). We therefore deem them abandoned, *see EEOC v. Md. Ins. Admin.*, 879 F.3d 114, 122 n.10 (4th Cir. 2018); *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 568 n.7 (4th Cir. 2015), and affirm the district court's standing rulings.

Finally, with respect to Dr. Haddad's trial testimony, Defendants' argument that her testimony regarding the veterinary care provided at Tri-State was without foundation and therefore should have been excluded is also presented without conformity to Rule 28(a)(8)(A) and thus has been abandoned as well. Insofar as Defendants are challenging Dr. Haddad's credibility as a witness, the district court's determination on witness

9

credibility is not reviewable. *See United States v. Saunders*, 886 F.2d 56, 60 (4th Cir. 1989).

Accordingly, we affirm the district court's judgment. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid the decisional process.

*AFFIRMED*