**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 18-2155

MICHAEL H. HOLLAND; JOSEPH R. RESCHINI; CARLO TARLEY; UNITED
MINE WORKERS OF AMERICA 1992 BENEFIT PLAN,

                    Plaintiffs − Appellants,

    and

MICHAEL O. MCKOWN,

                    Plaintiff,

      v.

CONSOL ENERGY, INC.,

                    Defendant – Appellee.

Appeal from the United States District Court for the Southern District of West Virginia, at
Charleston.  Thomas E. Johnston, Chief District Judge.  (2:17-cv-02091)

Argued:  May 7, 2019                           Decided:  August 1, 2019

Before GREGORY, Chief Judge, and AGEE and DIAZ, Circuit Judges.

Affirmed by unpublished opinion.  Judge Diaz wrote the opinion, in which Chief Judge
Gregory and Judge Agee joined.

**ARGUED:** Diana Migliaccio Bardes, MOONEY, GREEN, SAINDON, MURPHY &
WELCH, PC, Washington, D.C., for Appellants.  John R. Woodrum, OGLETREE,

DEAKINS, NASH, SMOAK & STEWART, P.C., Washington, D.C., for Appellee. **ON BRIEF:** Paul A. Green, John R. Mooney, Olga M. Thall, MOONEY, GREEN, SAINDON, MURPHY & WELCH, PC, Washington, D.C.; Glenda S. Finch, Larry Newsome, UMWA HEALTH & RETIREMENT FUNDS, Washington, D.C., for Appellants. W. Gregory Mott, OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C., Washington, D.C.; Jan L. Fox, STEPTOE & JOHNSON PLLC, Charleston, West Virginia, for Appellee

Unpublished opinions are not binding precedent in this circuit.

DIAZ, Circuit Judge:

The United Mine Workers of America 1992 Benefit Plan ("1992 Plan") and its Trustees brought this action against Consol Energy Inc., alleging that Consol violated the Coal Act by changing its health coverage for retired coal workers and their beneficiaries. The district court dismissed the suit for lack of standing, finding that the plaintiffs could not establish injury in fact. For the reasons set forth below, we affirm.

I.

A.

We start with the legal backdrop. The issue of health care benefits for retired coal workers has a protracted history. *See E. Enters. v. Apfel*, 524 U.S. 498, 504–15 (1998) (plurality opinion) (discussing history leading to the enactment of the Coal Act); *Holland v. Big River Minerals Corp.*, 181 F.3d 597, 600–02 (4th Cir. 1999) (same). Suffice to say that in 1992, in the wake of spiraling health care costs and declining coal production, Congress enacted the Coal Act to guarantee health coverage for retired coal workers and their dependents. *See* Pub. L. No. 102–486, 106 Stat. 2776 (1992) (codified at 26 U.S.C. §§ 9701–9722).

The Coal Act legislated significant changes in the industry. Two are relevant to this dispute. First, the Act mandated that the coal worker's last employer (referred to in the Act as the "last signatory operator") provide health coverage to coal workers (and their dependents) who were receiving benefits or eligible to receive benefits as of February 1, 1993, and who retired on or before September 30, 1994. 26 U.S.C. § 9711(a)–(b). The

3

coverage must continue for as long as the last signatory operator (and any related person) remains in business, and the coverage must be "substantially the same as" the coverage provided by the last signatory operator as of January 1, 1992. *Id.* § 9711(a), (b)(2).

Second, the Act created a trust fund called the 1992 Plan. *Id.* § 9712(a). The 1992 Plan provides coverage to any beneficiary who is eligible for coverage under § 9711, but who is not receiving such coverage from their last signatory operator. *Id.* § 9712(b)(2)(B). If the 1992 Plan is required to cover someone who should have received coverage from the last signatory operator, then the operator is liable to the 1992 Plan for the costs of coverage. *Id.* §§ 9711(c), 9712(d)(4).

## B.

Turning to the facts of this case, Consol Energy and its subsidiaries operate a coal mining business in West Virginia. The subsidiaries are the "last signatory operators" for its retirees, and Consol is a "related person" to the subsidiaries. Accordingly, Consol is required under the Coal Act to provide health coverage to eligible retirees and their dependents. It's undisputed that Consol provided such coverage for more than two decades following the passage of the Coal Act.

In July 2016, however, Consol sent a letter to its beneficiaries informing them of upcoming changes to their health coverage. Under these changes, beneficiaries would pay more for brand-name drugs and out-of-network providers, and retirees couldn't add new dependents to their coverage after December 31, 2016. The 1992 Plan says it has fielded numerous calls from beneficiaries who are concerned about these changes to their coverage, and has otherwise expended resources monitoring the situation.

4

Following the changes, the 1992 Plan and its Trustees sued Consol. The plaintiffs alleged that Consol had failed to provide coverage that was "substantially the same" as the prior coverage, in violation of § 9711 of the Coal Act. They further alleged that Consol's refusal to provide such coverage to eligible beneficiaries would harm the 1992 Plan, which is obligated under § 9712 of the Coal Act to provide health coverage to beneficiaries not receiving the required coverage under § 9711. The plaintiffs sought a declaratory judgment that Consol had violated the Coal Act, injunctive relief to prevent Consol from denying benefits to statutorily eligible beneficiaries, and compensatory damages for any costs the 1992 Plan would expend if eligible beneficiaries were denied coverage.

Both parties moved for summary judgment. The district court dismissed the suit for lack of standing. The court found that the 1992 Plan had alleged no actual injury, and that any future injury was too speculative to give rise to Article III standing. This appeal followed.

## II.

Article III limits the judicial power of the United States to "Cases" and "Controversies." U.S. Const. art. III, § 2. Embedded in this limitation is the requirement of standing to sue, which "ensure[s] that federal courts do not exceed their authority" and "confines the federal courts to a properly judicial role." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).

To establish Article III standing, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is

5

likely to be redressed by a favorable judicial decision." *Id.* "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements." *Id.*

This case primarily concerns injury in fact, the "'[f]irst and foremost' of standing's three elements." *Id.* (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103 (1998)). To establish injury in fact, a plaintiff must allege an injury that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Id.* at 1548 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). "Imminence" means that the injury is "*certainly* impending," or that there is a "substantial risk" of future harm. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409, 414 n.5 (2013). "Although imminence is concededly a somewhat elastic concept, it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes . . . ." *Id.* at 409 (quoting *Lujan*, 504 U.S. at 564 n.2).

Here, the plaintiffs raise two theories of injury in fact. First, they allege economic injury to the 1992 Plan in the form of future costs to cover beneficiaries and present expenditures to mitigate those costs. Second, the plaintiffs allege a statutory injury that they believe is sufficient by itself to satisfy Article III standing. We review these arguments de novo. *See Liberty Univ., Inc. v. Lew*, 733 F.3d 72, 87 (4th Cir. 2013).

A.

We first address the alleged economic harm to the 1992 Plan. The plaintiffs allege impending injury to the 1992 Plan due to Consol's failure to provide coverage that is "substantially the same" as the prior coverage. According to the plaintiffs, the 1992 Plan will be obligated to cover existing beneficiaries (making up for any differences between

6

Consol's prior and updated coverage) and to enroll any new dependents who become eligible after December 31, 2016. For example, the plaintiffs argue that if a retiree gets married or adopts a child today, then Consol will deny coverage to those new beneficiaries. And if Consol denies coverage to those beneficiaries, then the 1992 Plan is obligated to cover them. Although this particular scenario has not yet come to pass, in the plaintiffs' view, it's not a question of "whether" this will happen, but of "how many" beneficiaries they will have to cover.

The plaintiffs contend the district court erred by finding their "risk-based" theory of harm insufficient to satisfy Article III standing.[1] But the district court didn't outright reject the risk-based theory. Rather, the court dismissed this case because the risk of harm—that the 1992 Plan will have to provide benefits to beneficiaries at some point in the future— was "too speculative to give rise to Article III standing." J.A. 241. We agree.

Although a risk of future harm can certainly satisfy the injury-in-fact requirement, the plaintiffs must still show that the harm is imminent. The plaintiffs can't meet that burden. Simply put, the plaintiffs have failed to present evidence establishing even a substantial risk that beneficiaries will seek coverage from the 1992 Plan. At most, they have alleged that the 1992 Plan will someday have to enroll beneficiaries, without specifying "*when* the some day will be." *Lujan*, 504 U.S. at 564. This allegation is simply

---

[1] The plaintiffs also argue the district court erred by failing to consider that harm in a declaratory judgment action is different from harm in actions seeking damages. But although the Declaratory Judgment Act is a means to resolve a controversy prior to an actual injury, it doesn't eliminate the requirement that the injury be imminent, which "is a hard floor of Article III jurisdiction that cannot be removed by statute." *Summers v. Earth Island Inst.*, 555 U.S. 488, 497 (2009).

not enough, as the imminence standard is "stretched beyond the breaking point" when the plaintiff "alleges only an injury at some indefinite future time." *Id.* at 564 n.2.

We also find it significant that in the two years since the changes went into effect, the 1992 Plan has suffered no actual injury. For example, in *Beck v. McDonald*, 848 F.3d 262 (4th Cir. 2017), the plaintiffs alleged injury based on an increased risk of future identity theft after their laptops and boxes containing personal patient information were stolen. In finding the risk of future injury "too speculative," we noted that it had been years since the breaches, but the plaintiffs had uncovered no evidence, "even after extensive discovery," that their information had been accessed or misused. *Id.* at 274.

Similarly here, the plaintiffs have failed to present any evidence of a beneficiary seeking coverage from the 1992 Plan. And since nothing in the record suggests this status quo will change, we fail to see how the harm to the 1992 Plan is imminent. Indeed, as Consol's policy changes fade farther into the past, the plaintiffs' "threatened injuries become more and more speculative." *Id.* at 275.

We don't dismiss the possibility that some beneficiaries may seek coverage from the 1992 Plan at some point in the future. But "'[a]llegations of *possible* future' injury are not sufficient" to satisfy Article III standing. *Clapper*, 568 U.S. at 409 (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)). The injury must be imminent, and we agree with the district court that the allegations in this case are too speculative to give rise to Article III standing.

Because we see no imminent risk of harm, we also reject the plaintiffs' claim to standing based on its present expenditures to identify, avoid, and mitigate the harm

8

allegedly caused by Consol. Although plaintiffs can generally establish standing "on the basis of costs incurred to mitigate or avoid harm," they may only do so if a "substantial risk of harm actually exists." *Hutton v. Nat'l Bd. of Exam'rs in Optometry, Inc.*, 892 F.3d 613, 622 (4th Cir. 2018). Since the harm to the 1992 Plan is speculative, the plaintiffs' mitigating measures also fail to establish injury in fact. *See Beck,* 848 F.3d at 276–77; *see also Clapper*, 568 U.S. at 402 ("[R]espondents cannot manufacture standing by choosing to make expenditures based on hypothetical future harm that is not certainly impending.").

B.

We next address the plaintiffs' allegation of a statutory injury. The plaintiffs contend that Consol violated the Coal Act, and that the violation of a statutory requirement can, in and of itself, satisfy the injury-in-fact requirement of Article III.

The plaintiffs' theory springs from the Supreme Court's decision in *Spokeo*. There, the Court recognized that Congress may create "legally cognizable injuries" and define injuries that will give rise to a case or controversy. 136 S. Ct. at 1549 (quoting *Lujan*, 504 U.S. at 578). But, the Court said, "even in the context of a statutory violation," Article III standing still "requires a concrete injury." *Id.* Thus, "a bare procedural violation"— divorced from "any concrete harm" or "risk of real harm"—cannot satisfy in the injury-in-fact requirement. *Id.*

To show a statutory injury, the plaintiffs allege that Consol violated § 9711 of the Coal Act by failing to provide health coverage that is "substantially the same" as the prior coverage. Even if we accept that premise, we fail to see a cognizable injury to the 1992 Plan. To the extent § 9711 creates statutory rights, they belong to the beneficiaries who

9

would be denied coverage.  But no beneficiaries are named parties, and the plaintiffs have not brought this suit to enforce its beneficiaries' statutory rights.

To be sure, § 9712 of the Coal Act requires the 1992 Plan to provide health coverage to beneficiaries not receiving the required coverage under § 9711.  But even if this were a legally cognizable injury, the plaintiffs must still show a concrete injury.  *See Spokeo*, 136 S. Ct. at 1549.  And the only alleged injury is the possibility of future harm to the 1992 Plan.  As this allegation is merely "a repackaged version of [Plaintiffs'] first failed theory of standing," *Beck*, 848 F.3d at 276 (quoting *Clapper*, 568 U.S. at 416), the statutory injury suffers the same fate.  Without any concrete harm or risk of real harm, the plaintiffs have alleged only a bare statutory violation that can't satisfy Article III requirements.[2]

* * *

The district court correctly dismissed this case for lack of standing.  Its judgment is therefore

*AFFIRMED*.

---

[2] Because we affirm on the ground that the plaintiffs have not suffered an injury in fact, we don't address Consol's alternative arguments regarding ripeness or whether there is an "actual controversy" for purposes of the Declaratory Judgment Act.

10